Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between deceased employee (hereafter "decedent) and defendant-employer.
3. Commerce Casualty Insurance Company is the carrier on the risk.
4. The date giving rise to this claim is May 3, 1999 and decedent did not return to work after May 3, 1999.
5. Decedent died on January 24, 2000.
6. Industrial Commission Forms relating to this case were stipulated into evidence as Stipulated Exhibit 1.
7. Decedents Employment File was stipulated into evidence as part of Stipulated Exhibit 1.
8. A Form 22 was stipulated into evidence as part of Stipulated Exhibit 1. The parties stipulated that decedents average weekly wage was $600.00, yielding a compensation rate of $400.00.
9. The death certificate of decedent was stipulated into evidence as part of Stipulated Exhibit 1.
10. Decedents Medical Records were stipulated into evidence as part of Stipulated Exhibit 1.
11. Pictures of the work site at issue were stipulated into evidence as Stipulated Exhibit 2.
12. The issues before the Deputy Commissioner were: (i) whether decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer; and (ii) if so, what compensation, if any, is due decedents estate. On appeal to the Full Commission, defendants assigned as error only the portions of the Opinion and Award dealing with the provision of attendant care to decedent.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Decedent was employed by defendant-employer as a carpenter and was engaged in building the Wagg-Garrou house on Figure Eight Island, North Carolina. Decedents prior work experience was as a carpenter and he had been working in that capacity for at least the last 10 years.
2. At approximately 10:30 a.m. on May 3, 1999, decedent was working on an unguarded partially completed deck attached to the house under construction. Decedents employment with defendant-employer required him to work on the deck.
3. The deck upon which decedent was working was approximately 12 feet off the ground. There were pilings and an approximately 3 foot high cinder block retaining wall beneath the deck.
4. Plaintiff had finished discussing the construction project with his foreman, Dan Poretti, and a co-worker, Gerald Applewhite. Mr. Poretti left the deck to check on other aspects of construction of the house when plaintiff began to feel nauseated and light-headed.
5. There was no railing or guardrail around the deck on May 3, 1999. Decedent walked to the edge of the deck to avoid becoming nauseated on the deck. Decedent knelt down on one knee, blacked out and fell off the deck.
6. Although decedent had reported being nauseated and light-headed before falling, Mr. Applewhite indicated that he did not observe any indications of a seizure prior to or at the time that decedent fell off the deck.
7. As a result of the fall, decedent sustained a blow to the head with some hard object which caused a linear horizontal cut on his forehead that was 3 inches wide and 2 to 3 inches long. Decedent required 16 stitches to close the wound. Decedent sustained a head injury which resulted in uncontrolled seizure disorder and personality changes as well as decreased memory and problem-solving ability.
8. As a result of the fall, decedent landed on his left hand and broke the left second and middle proximal phalanges.
9. While decedent was unconscious as a result of his fall, his arms and legs were stiff and jerking. Decedent suffered from post-traumatic seizure disorder and generalized tonic-clonic seizures secondary to a head injury.
10. Decedent was treated for his closed head injury by C. Frank Chen, M.D. Dr. Chen confirmed that as a result of the fall, plaintiff sustained personality changes, increased hostility, and had symptoms consistent with a frontal lobe head injury.
11. Dennis B. Nicks, M.D., treated decedents broken hand.
12. Decedents loss of consciousness was of unknown etiology. However, decedents employment required him to work on the deck which was 12 feet off the ground, placing him at risk of serious injury in the event of a fall. Decedents injuries to his head and hand are a result of his fall from the deck.
13. Decedent was disabled as a result of his compensable injuries by accident from May 3, 1999 until January 24, 2000, the date of decedents death.
14. Dr. Chen instructed decedents spouse not to leave decedent alone while he was undergoing treatment and still having seizures. Dr. Chen stated that he was afraid for decedents safety in case he had a seizure or other problem. Dr. Chen also expressed concern about decedents homicidal ideation, and believed that "its better to keep an eye on him.
15. Plaintiffs wife was required to be with him in order to provide care and was unable to work outside the home due to this care. Decedents wife was relieved by a family member or friend only in rare circumstances.
16. As the result of the compensable fall, decedent suffered a closed head injury that caused an uncontrolled seizure disorder, personality changes, decreased memory and problem-solving ability and hallucinations, as well as homicidal ideation. Therefore, the Full Commission finds that decedent needed attendant care services. It was in the best interests of decedent for his wife to provide attendant care for him.
17. A reasonable amount of time required for attendant care of decedent was 10 hours per day, 7 days a week.
18. The record in this case contains no evidence as to the standard wage in the Wilmington area for uncertified, unskilled health care attendants.
19. Defendants have not defended this action without reasonable grounds.
20. The cause of decedents death is not known at this time.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On May 3, 1999, decedent sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. As a result of his compensable injury by accident on May 3, 1999, decedent was disabled and entitled to temporary total disability at the rate of $400.00 per week from May 3, 1999 through January 24, 2000, the date of his death. N.C. Gen. Stat. 97-29.
3. Decedent was entitled to medical care for his closed head injury, generalized tonic-clonic seizure, and the breaking of his second and left middle proximal phalanges. N.C. Gen. Stat. 97-25.
4. As a result of decedents injury by accident, decedents wife is entitled to receive reasonable compensation at a rate pursuant to the order below for necessary attendant care of decedent for 10 hours per day, 7 days a week, for the periods of time between May 3, 1999, and January 24, 2000 decedents wife provided such care. N.C. Gen. Stat. 97-25.
5. Defendants have not defended this cause without merit. N.C. Gen. Stat. 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to decedents estate temporary total disability compensation at the rate of $400.00 per week from May 3, 1999 through January 24, 2000. Said amount shall be paid to his estate in a lump sum, subject to an attorneys fee approved in Paragraph 4.
2. Defendants shall pay all medical expenses resulting from decedents compensable injuries on May 3, 1999.
3. Defendants shall pay decedents wife compensation for attendant care for days decedents wife provided care during the period from May 3, 1999 until January 24, 2000, at a rate pursuant to the order below for 10 hours per day, 7 days a week.
4. A reasonable attorneys fee of 25% percent of compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiffs counsel and shall be paid as follows: 25% percent of the lump sum due plaintiff under Paragraph 1 of this Award shall be deducted from that sum and paid directly to plaintiffs counsel.
 ORDER
1. Because no evidence was presented at the hearing before the Deputy Commissioner concerning the average market rate for unskilled attendant care in the Wilmington area, the parties are ORDERED to confer in an effort to agree upon the average hourly rate for such care. In the event the parties are unable to agree on a rate, the parties shall notify Commissioner Laura K. Mavretic, and the Commission will then order the taking of additional evidence on this issue. The parties shall also notify the Commission if they are unable to stipulate as to the actual days during the period from May 3, 1999, until January 24, 2000, on which decedents wife provided attendant care to decedent.
2. The issue of death benefits, if any, which may be payable to decedents estate is hereby RESERVED.
3. Defendants shall pay the costs.
This the ___ day of February 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
LKM/bjp